Michael McClure, please call the next case. 312-365, Michael McClure, U.S. Department of Justice. Counsel, you may proceed. Thank you. Thank you, Your Honor. May it please the Court and Counsel, my name is Emanuel Guy and I represent Mike McClure, who is the petitioner and claimant in this case. I know you're familiar with the facts, so I'm not going to spend any time other than about 15 seconds just to give you a setting that Mike was a UPS driver for 26 years. Now, I'd like to point out, Your Honors, that the counsel table is 29 and a half inches tall. Mr. Miglio had to get in and get out of the UPS truck 400 times a day with a 21-inch step, which would be about two-thirds the height of that table. Now, that was the background of his employment experience. Very reliable employee. And he, on December 2nd of 2004, he fell into a hole that was four foot deep while making a package delivery. And he suffered, on the left knee, a lateral meniscal tear, a joint effusion, and evidence of chondromalacia patella. On the right knee in 2005, a grade IV osteochondral injury to the lateral femoral condyle, complex tearing of lateral meniscus, and evidence of prepatellar bursitis, and evidence of chondromalacia patella. Now, Your Honors, there are two aspects that I think that we're here on. The first is that I think the award was low, and I'll go into that a little bit later. But I think that what you're more interested in would be the claim of error with respect to my effort to amend the complaint or the application for benefits on the day of the hearing prior to the start of the hearing. The commission, arbitrator in the commission, said that we had to file a new application. I did give oral. It was an oral amendment. And the only thing that changed on the application for benefits was there was a second injury on August 29th of 2005, with less than nine months after the first injury to the right knee. In the treatment that Mr. Miglio had, he had one surgery to correct the problems with the left knee, and he's had three surgeries on the right knee. Now, the arbitrator in the commission used as their authority to deny the benefits for the second injury to the right knee. On the case of Moore, that has been cited by a respondent, and I discussed in the brief, my reply brief. The facts of Moore are completely different. In Moore, the hearing was held and proofs were closed, and then there was an attempt to amend and add a third-party defendant who had no notice of the injury, no notice of the hearing, and did not appear at the hearing. And then they tried to amend to say that they were responsible for payment of the financial obligation for the injury. I do not know how Moore can be cited as some sort of authority to say that we, an amendment to the claim that we filed within the statute of limitations period of three years, that Moore says that we can't amend the date of the last injury to the right knee, and therefore, you do not get any compensation for that. Counsel, let me ask you a point of question. If the alleged accident on August 29, 2005, is deemed to be a separate accident resulting in new injuries, isn't that a problem with the statute of limitations? Yes, of course there is, because the statute of limitations expired IB 12-2 of 07, and yes, that would be a problem. So you're saying the accident on August 29th didn't result in new injuries? No, it was an aggravation of the injury, and it was the same type of injury, it was another lateral meniscus tear that Dr. Mitchell, the operative surgeon, had to repair. So it's a re-tearing of the lateral meniscus, correct? Pardon? It was a re-tearing of the lateral meniscus, right? Yes, correct. So that's not a new injury? I... That's the rub, isn't it? The problem is, is how do you look at that? Is it, was the knee of Mr. McLeo more susceptible to injury? Is it an aggravation? The arbitrator said it was an aggravation in his opening comments when I made the motion to amend, and then later on he changed it, he dropped the aggravation. Well, I mean, let me ask you to comment. Is a re-tearing an aggravation? I think it is. I really do. I mean, if you have a weakness that's been repaired and then you have another similar injury within a short date after, I think it's an aggravation. Is there any evidence that it was torn in the same place? Your Honor, as I was sitting here today, I was thinking about that, but I don't know if the doctor said... I mean, you can say if you have a weakened, you know, okay, if it's a weakened place, it was torn in the same place before and it's torn in the same place again. I understand what you're saying, but... Well, the meniscus is like a membrane, and if it's torn in one place, I think it's weakened throughout. So I think it would be more susceptible to an injury in the same area, which it did in fact happen. Did any doctor testify to that, that because the meniscus had been made more susceptible to the injury, that that was a factor in it tearing on the second occasion? He didn't testify, but we have a letter from Dr. Mitchell, and I think he made reference to that. If... I mean, I understand you're trying to make an argument that it's an extension of the same injury. Right. Right, Your Honor. Your Honor... My question is, where is the, where is there medical support in the record for that? Your Honor, if I just have a minute here, I have it, I think, in Dr. Mitchell's, in his letter. He talked about that, and he said that when you have an injury to that area... Let's see, Your Honor, I have to get it out of... I know I have it. If I could just have one minute. What he said is, It is well known within the medical literature that people that undergo partial meniscectomies will have accelerated degenerative changes within their knees. I believe beyond a reasonable degree of medical certainty that Michael Miglio will need to have knee replacement surgery within each knee at some point in the future. I believe the current degenerative changes that he has in his knees will continue to progress and will progress faster than usual secondary to the meniscectomies, which were required for the municipal tears and were causally related to his work-related injury as a UPS driver. He's really, what he's doing there is relating these injuries to the need for knee replacement. He's doing that, but he's also saying that the fact that he had the meniscectomies makes him more susceptible to injury, I think. I think he says more susceptible to degenerative changes is what you're reading as opposed to re-tearing. I don't see anything in it that says... Well, but the tearing is a traumatic event. It comes at one time. But I think that his work that he did as a UPS driver, it also lent itself to the development or to the exposure that it could happen again rather easily, not as an initial type of injury that it just happened. I mean, I think that he was more susceptible to the second injury. And also in response, Your Honor, to your question about the statute of limitations, I have given the court authority, I believe, on the arguments I've made with respect to relation back and that in the Porter v. Decatur Hospital case, it says that it relates back to the initial injury and the claim has been filed within the statute of limitations. Then we have the right to have that, amend that complaint and recover benefits for that second injury to the right knee. Also, Your Honor, I know from experience and I'm sure the court has read cases where if you have a knee sprain, you get 15 percent of a leg award. This arbitrator gave 18 percent for two very serious knee injuries. I mean, basically, you got about six weeks' compensation for in addition to, you know, what would be called a knee strain. I mean, I think that the award, I know this Court does not write the awards, but it just seemed like the award is so low in comparison to what it should be that I also, you know, ask that the Court consider remanding it for recalculation of the award, because the torn medial and meniscus and the other matters, the chondromalacia, the patella, they certainly command a higher award than 18 percent. Six weeks is all he's going to get out of it. The other thing I would like to address today would be this concept of intervening event. That's a common law doctrine that certainly has viability in the common law courts, but I think that an intervening event has to have some sort of external force that caused the injury or a third party involved, or generally speaking, I think of it in terms of something not related to the work comp injury setting. And I know that when we talk about intervening events, the classic case is someone's in an auto accident and on their way to the hospital in the ambulance, they are T-boned at an intersection, and they say, well, that's an intervening event. This is the next injury. But that isn't what happened here. Mr. Miglio was delivering packages. That was his job. He got in and out of that brown truck 400 times a day. And, you know, he had some, around the 15th year, he started having knee problems, but not enough that he did anything about it. But then when this traumatic sequence happened, why, we filed a claim. The respondent has always been fully informed of the date and the type of the injury on the day it happened. Mr. Miglio reported that evening to his supervisor. I think the respondent has the obligation, the burden, to show they've been prejudiced in some way to defend the case. And they have not even mentioned anything about prejudice or some inability to do a proper investigation. So I think that they've not been hurt in any way in defending the case. Mr. Miglio did ask for alternate employment offered by UPS, but was not offered anything. He had also asked for a new truck that had a 10-inch step down, and that was not given to him in all the time he worked there. Your Honors, in conclusion, I just want to say that, you know, the workers' comp system is a system to compensate the employees for their injuries. And when an injury occurs, they should make an assessment of the injury and the ability of the employee to be employed in the future. Here, Mr. Miglio has been told by his doctor that he's going to have to have his knees replaced. There's no question about that. So his choice was keep working and it's going to happen sooner, or, you know, he had enough time and grade to retire, so he took the retirement thing. But, again, I just think that the award was too low, and also the arbitrator based his denial of the second injury to the right knee on the basis of an intervening event, and I don't think that was – I think that's error. So if you have any questions, I'll be happy to try to respond to them. I don't believe there are. Thank you, Counsel. Thank you. Good morning, Your Honors. Counsel Mark Zapp, appearing on behalf of the appellee. Counsel wants it both ways in this case. He either wants to have you decide that the rules of the Industrial Commission don't apply to him, or he wants you to decide that there was an aggravation and not a second accident, and that just doesn't factually play out in this case. Why is it not an aggravation? It's not an aggravation because, foremost, after the first accident, his doctor, Dr. Mitchell, released him. Here's his release note dated April 21, 2005, after the first accident. Any restrictions? He's doing quite well, no complaints of pain. He has an excellent range of motion. Muscle strength testing is five out of five. There's no swelling. At this point, I recommend he return to full duty work with no restriction. No restriction. Then he goes back to work, no complaints, no visits to the doctors. Four months later, he has a completely new accident, completely new documented accident here. It's documented in the medical records. Counsel keeps alluding to, like, this is a repetitive trauma case here, but there's no opinions provided by any medical doctor that, based on the claimant's job duties, these conditions of his knees were caused by his repetitive work. Clearly, the histories are too separate and distinct. Was there any medical testimony his knee was more susceptible to a meniscal tear as a result of the first one? I'm not aware of any. And the letter that the claimant's attorney cites to was written by the doctor after both accidents. He's not just referring to the first accident, which was what was litigated. I was provided with an application for the first accident date. I was not provided with an application for any other accident date here. We litigated the case based on the first accident. The rules say one application per injury. Counsel didn't comply with that rule. As far as an amendment is concerned, he made an oral motion before the arbitrator to amend the complaint. Well, even the rules state with an amendment, you have to file an amended application. It has to be written on there, amended. It has to be served to counsel. There was never a filed amended application in this case, so there's no compliance with the rules here. The arbitrator made the right decision with regard to that. We then litigated this one case here, and there was an accepted accident. There was causation. It was a nature and extent case. He had a full duty release based on this nature and extent case. All right. Let me ask you this. He threw out something interesting that we usually see in a defective notice case. He said, well, what's the prejudice to the Respondent here? Is prejudice an element for us to consider on a statute of limitations issue? I don't think there is a prejudice to consider on a statute of limitations issue, but I guess I could respond to how I would be prejudiced if you would allow, if you I wrote my brief. We draft these proposed decisions. I based it on the application, based it on the testimony at trial. I did not base it on a non-existent application or an amended application, which was never allowed. I based it on that. To allow him to allow the relief he wants right now would have denied me an opportunity to defend in that second case there. And, I mean, among other things, he's claiming Could you move for a continuance? Pardon me? Could you move for a continuance? The arbitrator decided to try the case that day. We were there. I understand what the arbitrator did. Yeah. We're talking about a prejudice issue. Counsel could have asked for a continuance. He may have in the record. I don't know if that was granted or not, but Would getting a continuance aid the claimant in any way in filing a claim on a date that the statute of limitations has run? Under the rules, I don't see how. I don't see how he could evade the statute of limitations. And I don't believe that you can amend a complaint by adding a completely new accident date to it. I don't believe he could get around that. If it was treated as a repetitive trauma claim, the application showed the date of the manifestation date as the first accident. And there was no request to amend for a new manifestation date. The request was to add an additional date. That's correct. That's correct. And, again, I don't think this is a repetitive trauma case. I don't believe the evidence supports that. One thing counsel indicated is his client was forced to retire in his arguments here. If there was a second application, I'd been given an opportunity to defend that. I probably would have brought in a supervisor to testify. Look, was he complaining? Was he having a difficult time? I probably would have gotten an IME to refute the opinion from Dr. Mitchell there as far as whether or not he needed the total knee replacements and the relationship to the different accidents there. I would have completely defended the case differently. But as it was, I had the one application that was what was decided by the court in accordance with the rules. And the facts show two distinct accidents here. Unless the court has any other questions, that's all I have. I don't believe so. Thank you. Thank you. Counsel, you may reply. Thank you. Just five responses, but single sentences, really. Counsel stated that the rule does not apply. And then he talked about the rule specifically says you can't amend an accident or claim. And that's, I think the case really should turn on what's the definition of a claim before the industrial commission, the workers' comp commission. It's what's the disability to the employee. The claim is the injury to the right knee. And everybody gets two knees, so we have a left knee that's injured and a right knee that's injured. So I'm asking the commission to, and this court, to say the claim includes the second injury on August 29th of 2005. With respect to the, that's more than one sentence, I'm sorry. But with respect to the release, in our area, I'm from Streeter, Illinois, and we have I think a pretty good orthopedic surgeon named Dr. Sinha. And there's others in our area, Dr. Mitchell, Dr. Meyer, I think, in Peru. They will give you a release because, to full duty, because they know that if they don't give the full duty release, there's not going to be a job for these people. It doesn't matter what their condition is. They know it. And, I mean, I've had that. I've had people come in the office. They get a full duty. And I said, He gave you full duty? Yeah. Otherwise, they're not going to go back to work. And they have families to support. I mean, that's a fact. And maybe nobody wants to admit it, but I'm just telling you that's what my experience is. The new event, new injury, he said it was a new event to the same body site four months after he went back to work. Again, Mr. Miglio went back to UPS. And, yes, he's doing fine and all that kind of stuff. But if he doesn't go back with full duty, he's not going to have a job. And he asked for another job within the company. There was no other job. He asked for a 10-inch step-down truck. No, we don't have that. You have a 20-and-a-half-inch step-down. Now, again, two more. I made an oral motion before the hearing started. The rule provides for that. Counsel is suggesting that it has to be in writing. I think if you have an application for benefits that has all the information that's there, and I amend that complaint, the date of the injury, I think that's good enough. And, in effect, he's got a copy of what he needs. What did you want to amend the date of the injury to say? What did you want the amendment of the date of the injury to say? What I wanted to say was it would be 8-20. So you were eliminating the first. No, not eliminating. Oh, you want it both on the same application. Correct. You can't do that. You have to have each event has to be on a separate application for adjustment of claim, doesn't it? I would take issue with the Court with your statement. I don't think that's necessary. Because the purpose of the application What do the rules say? Pardon? What do the rules of the Industrial Commission say? One application per event. No, no. One accident or claim. Claim. Accident. One accident or claim. That's incidental alternative. A claim is injury to the right knee. Now, the first injury What are the accidents? Pardon? The first accident is he went down the step and hurt his knee. Right. And the second accident is he went down the step and hurt his knee. So we've got two accidents on one claim form. And when it's stated in Rule 7020.20B says accident or claim is stated in the disjunctive. So I can do it either way. Accident date or claim. And the claim is for injury to the right knee. The second injury date was 8-20 of 2005. Now, the Let's be real. The claim part is for repetitive trauma. Because repetitive trauma doesn't happen on a spurting date. You've got an injury to a portion of the body. You have to declare a manifestation day. So that's the claim. The claim is this. You had two separate accidents. It belonged on two separate claim forms. I mean, it's just, it is what it is. Your Honor, if that's the case, then how do you separate the disability to the right knee for the first accident and against the second accident? Oh, they made sure it may be consolidated and give you one award. They've done that before. Sure. They can't separate them. There's nothing new about that. But that's consolidating two applications for adjustment of claim for a single hearing and a single decision. But that's what I'm asking for, though, is a single decision here for injury to the right knee for purposes of future employment. And that's what the workers' comp is about, I think. And also, in response to your, the last thing I'd like to bring up is that I know there's, I cited a case in my brief, and I don't have it in front of me, but the pleadings before the commissioner are to be liberally construed. And as long as they've got notice and are not prejudiced in any way in their defense of the claim, I don't think that we should have to worry about things that you have brought up here, which are legitimate issues. But I just think it should be decided in favor of the petitioner, the claimant here, because he's the one who was injured. Okay. Counsel, your time. Thank you. Thank you. Thank you, counsel, both for your arguments. This matter will be taken under advisement, and a written disposition shall issue.